By the Court.—Curtís, J.
It will be observed that the policy in question differs in its phraseology and provisions from those that have usually been before the courts for consideration. It insures the deceased in the sum of two thousand dollars, for the term of his natural life, in consideration of the surrender of a pre-existing policy, and of the semi-annual payments of thirty dollars and twenty-four cents for the term of five, years. It *327 also contains a provision for the issuing to the assured of a paid-up policy for a pro rata amount of the whole sum insured, in case he discontinues payments after the payment of the first annual premium.
The principal question presented, by the ease, agreed upon and submitted by the parties, is whether the policy was in force on the day when the assured died. The policy designates the first days of March and September as the time when the payments of premiums are to be made. It then proceeds to declare that the policy is issued, and is accepted by the assured upon the express condition and agreement “ that the premiums shall be paid on or before the days upon which they become due, or within thirty-five days thereafter.” The policy then provides that in case of a violation of any of its conditions it shall become null and void. The policy also contains a provision that from the amount to be paid in case of the death of the assured, there shall be first deducted the balance of the year’s premium and all indebtedness of the assured.
These provisions and clauses of the policy have to be considered and construed together to ascertain and give effect to the real intentions of the parties. There is no provision that the policy shall become void, if the payment of the semi annual premiums is not made on the first days of March and September, but it is provided that it shall become void if the premium is not paid within thirty-five days thereafter. An omission to pay the premium violates no condition of the policy until the thirty-five days have elapsed. There could be no forfeiture of the rights of the assured except in accordance with the terms of the policy. The defendants saw fit to issue a policy by the terms of which the insurance was in effect for six months and thirty-five days after September 1st, 1873, and containing no clause or intimation that the policy was to be annulled or made void by an omission to pay the premium before *328 the expiration of that time. Under such circumstances it is but reasonable to suppose that the assured was to be protected during the thirty-five days. He had reason to consider that to be the true meaning and intent of this policy, and if the defendants desired a different ■construction, they should have inserted in their policy the provision that a failure to pay on the first day of September or of March forfeited the policy.
Forfeitures are only enforced when it is clearly shown that they were meant by the actual agreement of the parties. Nothing in the present case shows that the parties agreed that there was to be any forfeiture "before the expiration of the thirty-five days. If a life insurance company, with a view of attracting the public and promoting its own business, chooses to extend the period for the payment of semi-annual premiums through a period of thirty-five days, and to employ language tending to indicate that the risk is extended through the same period, or which might bear that construction, it is not just that its reasonable intendment should be defeated by an interpretation in favor of the insurers. When still further the insurers, as in the present instance, place prominently upon the face of the policy at its head the words "non-forfeiting life policy,” it is difficult for the courts to enforce harsh forfeitures, into which the unwary may have been innocently lured. Verba ambigua fortius accipiuntur contra proferentum, (Jackson v. Topping, 1 Wend. 394; Linden v. Hepburn, 3 Sand. 670; Baxter v. Lansing, 7 Paige, 353; Marvin v. Stone, 2 Cow. 781).
In this aspect of the case, the defendants would have been liable if the premium payable within thirty-five days from March 1st. 1874, had not been paid. It was, however, paid to the defendants on the twenty-fourth day of March following, by the brother of the deceased, under written instructions from the deceased conveyed to him from Virginia two or three days pre *329 vious. The brother paid it on the twenty-fourth of March, the same day after he received by telegraph the intelligence of the decease of the assured.
The case as submitted shows no undue delay on the part of the person who made the payment, in view of the time in which he bad to comply with the terms of the policy.
It is claimed on the part of the defendants that this payment under the circumstances was unfair, and that the right to make it was personal to the assured, and could not be delegated, and that it ceased with his death.
The payment was by the instruction of the deceased, and reached the insurers after his death, as it might have done if the deceased had forwarded it by post or by a public carrier. There was no bad faith in complying with his request.
There is not much force in the claim that the right to make the payment was personal, and could not be delegated, and closed with his death. The language of the policy imposes no restriction as to who may make the payment, and is entitled to the same construction in favor of the assured as has been applied to the thirty-five days clause, and comes within the same principle. In the case of Want v. Blunt (12 East, 183) Lord Eilenborough based his ruling that the right to pay was personal to the assured on the provision of [the policy that the party whose life is insured should \himself pay during Ms life. But the present policy ban not be affected by decisions which, though apparently adverse to the plaintiff, will upon a careful examination be found to turn upon different language and restrictions. In Howell v. The Knickerbocker Life Ins. Co. (44 N. Y., 281) it is said in reference to a policy providing that the assured shall duly pay ” the premium, that such act could have been performed by any other person as well, and that “its payment did *330 not. necessarily depend upon his continued capacity or existence.”
The case of Tarleton v. Stanforth (5 T. R., 695) cited by the defendants on the argument, as well as various other cases, and some of them seemingly favoring the defendants’ position, will be found on examination to turn upon admissions or policies differing from the one before us.
In view of the form of the policy, and the construction put upon that class of instruments by our courts, the language of which is that of the insurers, I think the defendants are liable for the amount of the insurance, and the plaintiff is entitled to a judgment therefor, with his costs.
Monell, Ch. J., and Speir, J., concurred.